Oral argument, 15 minutes per side. Mr. Martin with an appellate cross-appellate. May it please the Court, John Martin on behalf of Mr. Gilbert. Your Honor, consistent with what I advised the Court previously, may I have five minutes for rebuttal? You may. Thank you. The case comes before this Court today on both an appeal and a cross-appeal. And with respect to the appeal, Mr. Gilbert faced trial for an aggravated robbery under Ohio law, felony murder, and aggravated murder under Ohio law. Ohio law under State v. Johnson, it said that when there are different conceptual groupings by which a crime can be committed, a jury must be instructed upon request that they must be unanimous as to a particular conceptual grouping. That makes sense. It makes sense that we don't want a jury to go back there and, to use the example that I believe is quoted from one of Justice Scalia's opinions in Richardson, we don't want them back there saying, well, it was either this or this, and the example he used was obviously a much more distinct conceptual grouping. He said that either X was killed on a Tuesday or Y was killed on a Wednesday. This is different, but there are still multiple distinct conceptual groupings. I distinguish this case from State v. Davis, the Ohio 2008 decision. Right. State v. Davis talks about the distinction between means and acts, between alternative means and separate acts. The offense was aggravated murder, and the offenses could have been kidnapping, aggravated robbery, or aggravated burglary, and, hell, they were merely different ways of committing the same offense of aggravated murder rather than separate elements. Isn't that what Davis decided? It is, Your Honor. How is that distinguishable from our situation here? Davis talks about how if there are separate acts, then, in fact, you have the need for the specific unanimity. And in this case, the separate acts are this. My client's charged with having caused the death of another, either because he committed a theft by threat of force, by the actual imposition of force, by the use of a firearm. And so you have these various things. And within the firearm specifications, the firearm specifications include the act of brandishing, the act of displaying, the act of possessing on his person, the act of using. And so you have these different – and those are separate things. You can't do those all at the same time. It's hard to shoot somebody without using it. It's probably hard to do it without brandishing it, and very likely hard to do it without threatening to use it. And it is true, Your Honor, that it is hard to do one without the other, but yet they are still separate acts along that continuum, if you will. And what you have is a situation where – and to go back to a case that I did not cite in the brief, but in response to Your Honor's question, it was Justice Scalia's concurring opinion, I believe, in Corrella v. California, which talked about the fact that it's not for a court of appeals to go back and say this is what the jury must have found. You know, this would all be – might be theoretically more interesting if the proof in this case were not so overwhelming that your client basically did all of these things. The – I can't pick my facts, Your Honor. And I'll be honest about that. I mean, given the overall picture of what happened here, it just kind of – unfortunately the wind gets taken a little out of your sails because of the end result. Well, and Your Honor, I – and, you know, I'd be disingenuous if I told you that, you know, this is a great set of facts. But at the same time, that right to have that jury be unanimous as to what is it that he did, not – and that's a matter of specific acts. That right is bigger than any set of facts. And that right is the right that is rooted in the Constitution that was violated in this case. Now, if I may, switching over to anticipate the cross appeal. The cross appeal is a situation where my client in Count 4 was charged in what was at that time a defective indictment. It did not include an allegation of mens rea with respect to the aggravated robbery charge of inflicted or attempted to inflict serious physical harm. It should have said recklessly inflicted or attempted to inflict. Can I sort of talk to you a little bit about kind of the way to conceptualize that argument? I mean, what the underlying problem is, is a state law issue, right? Yes. All right. Now, at the time of trial, there was – I mean, what the trial judge did was perfectly fine under Ohio law. It became not so fine by virtue of a Supreme Court decision, Ohio Supreme Court decision. Later, that decision was overturned, so now there's nothing wrong with what the trial court did. And so how do you build from a state – what's a state law violation at a given point in time to a federal due process violation? First of all, I do want to go back on one aspect of your premise. I would suggest to the court that it was not fine at the time the judge did it. It was not an error that the Ohio Supreme Court had yet to recognize. But when the Ohio Supreme Court comes down in Cologne and says, this is a structural error. The court of appeals reversed that conviction for reasons that had only to do with the intervening Cologne decision. Yes, yes. And so, yeah, and that's absolutely true. But my only point was that Cologne was not cutting new cloth and it was not breaking new law in Ohio. It was the first time the Ohio Supreme Court had recognized that issue. Now, that having been said, what you have, though, is this. And I think there's a couple things to remember. One, the state did not appeal that decision from the 8th District Court of Appeals. If the state had wanted to, they could have gotten themselves to the Ohio Supreme Court, asked the Ohio Supreme Court to consider the case. They could have become Horner or they could have, and I'm not exactly sure of the timing, could have fallen into the line of cases that later – How does that go to whether your client's due process rights were violated? Well, what it goes to is this. Due process necessarily has to look at the law that is the law of the case, if you will, and that in this particular case you have a structural error with respect to count four. This jury is not being told. It wasn't simply that the indictment was defective. The jury was not told that they had to even consider a mens rea with respect to count four. And so, therefore, what you have is a situation where a jury is relying on a count that without having to consider its mens rea, whether there was recklessness. When Horner turns around and reverses Cologne and says it's no longer structural error, Horner did not remove the fact that you still have to have a mens rea of recklessness with respect to this infliction of physical harm. And from that point of view, when this jury is saying, okay, did this death occur as a result of the commission of an aggravated robbery? And if they sit there and say, well, yeah, it happened as a result of count four. Don't you see it, everybody? And they're back there in that jury room and they're talking about count four as the basis for that felony murder, and not one of them has considered mens rea. They didn't unanimously convict him of count three, which was aggravated robbery by the firearm, right? They did unanimously convict him of count three. Why wouldn't that be enough predicate for a felony murder case? And, again, would have been enough predicate, yes. But was that their predicate? Without any type of jury interrogatory to tell a reviewing court or the trial court, for that matter, that this is the count upon which we premised our finding of felony murder. Doesn't that bring you to your claim that you were entitled to a unanimity instruction? It does. In which there isn't any requirement of the unanimity instruction under Ohio law. Your Honor, there, though, there is clearly two different conceptual groupings. The one conceptual grouping is theft by a firearm. The other conceptual grouping is theft by the infliction or threatened infliction of physical harm. So from that point of view, under Johnson, this would clearly be a situation where you would have two conceptual groupings. And what the district judge did here was to say, look, they could have premised it on this. They could have premised it on that. This one was flawed. Therefore, the felony murder is necessarily flawed because it relies on that. Your Honor, I see that my time's over. But if I may leave, I believe there's a question. You may respond to the question. Thank you, Your Honor. Quickly, could the state trial judge or did the state trial judge advise the jury that in order to convict the defendant of felony murder, they could predicate it on either count three or count four? I apologize. I don't have that page of the instructions before me. My recollection is that it was an instruction to the effect of it would be based on aggravated robbery and the elements of aggravated robbery. He either said will be instructed or have already been instructed. But I do not believe that the judge at any time ever got that specific and said either count three or count four. He did not draw it back to that, I believe. But again, I apologize. I should have that transcript page with me, and I don't. I'm not sure how you could instruct on felony murder without instructing the jury what the bases could be for the finding. That's just the trial judge and me speaking, and that's a comment, not a question. In that case, since my time is over, I thank the court for its indulgence. Thank you, counsel. May it please the court. My name is Jerry Fosnaugh, and I represent the warden. We ask you to affirm the district court's judgment as to Gilbert's claim of ineffective assistance to trial counsel and reverse the district court's grant of a conditional writ as to the aggravated murder conviction. Strickland requires demonstrating deficient performance and a reasonable probability of a different result. As the court's questions indicate, I don't believe Gilbert has demonstrated that here. As the district court held, the cases cited by Gilbert do not demonstrate an unreasonable application of clearly established federal law. He cites Richardson v. United States. And in that case, as the district court judge held, Richardson involved a statutory interpretation, and it was a federal criminal case, not a state habeas case. In addition, in Shadd, it was a plurality opinion, and the district court noted that counsel is not deficient for failing to ask for a unanimity instruction based on a plurality opinion. As this court also noted, Ohio's Supreme Court precedent indicates a unanimity instruction is not required under the facts of this case. Even in Johnson, it reviewed essentially felony murder and said that that was not distinct conceptual groupings. That was a single conceptual grouping based on related facts. And they said, in the end, the jury decided that the defendant committed a cause to death or killed the victim in committing a robbery, an aggravated robbery. As to the prejudice prong, as the state appellate court held and the record shows, there is no prejudice. The Ohio Supreme Court precedent is the unanimity instruction would not have been given, even if it had been requested. In addition, the result would have been the same here. There's no question about what he did. He tried to steal money from the victim. He shot the victim, and he fled after shooting the victim, and the victim died. That meets the elements of count three or count four of aggravated robbery. There's definitely an infliction of serious physical harm, and there's definitely a use of a firearm based on the facts in this case. Now, as to the sixth ground for relief related to the felony murder conviction, Gilbert cannot demonstrate the state court judgment was contrary to or an unreasonable application of clearly established federal law. The state appellate court reviewed his claim that it was required to reverse his conviction on felony murder based on their determination in count four, and they said, no, we are not required to reverse the conviction. They said that jurors found him guilty as to counts two, three, and four. That verdict is supported by his guilt. The verdict in count two is supported by his guilt in counts three and four, and the evidence supported the determination of guilt. As I noted in my brief, at the time of sentencing, there was no error in the indictment or in the instructions to the jury. I cited State v. Boehner in my brief on page 42, and opposing counsel indicated that Horner still requires a mens rea. However, in Horner, and I note this in footnote five of my brief on page 43, other than the 16 months that Colon was the law in Ohio, revised code 2911.0183 does not require proof of a mental state. So at the time of his conviction and at the time of his resentencing, Ohio law did not require a mental state in count four. He received the benefit of the erroneous ruling in Colon. He got that conviction reversed. It's gone. He's not being punished as to that conviction, and he never will be. But he is guilty on count three, and he's guilty on count two, and he's guilty on count one. And based on all of this, the state court judgment reviewing his claim as to count two was not an unreasonable application of clearly established federal law. And based on this, we ask you to reverse the district court's judgment as to the aggravated murder conviction in count two and to affirm based on the claim of ineffective assistance of the trial counsel. Thank you. Thank you, counsel. Thank you. Rebuttal? Clerk, please. Unless the court has any further questions, I have nothing to add to rebuttal at this time. Thank you, counsel. Case will be submitted. Clerk may call the next case.